378 So.2d 96 (1979)
STATE of Florida, Petitioner,
v.
Thomas Joseph DUKE, Respondent.
No. 79-1390.
District Court of Appeal of Florida, Second District.
December 28, 1979.
*97 Joseph P. D'Alessandro, State's Atty., and Richard M. Fuller, Asst. State's Atty., Fort Myers, for petitioner.
STRICKLAND, J. TIM, Associate Judge.
The state petitions for writ of common law certiorari to quash the circuit court's appellate reversal of the county court's conviction of Thomas Joseph Duke. We agree with the state's interpretation of Florida's implied consent law, Section 322.261(1)(a), Florida Statutes (1977), but deny the petition upon the case facts.
Duke was arrested for "driving while under the influence" on November 10, 1978. He refused the breathalyzer test offered by the arresting officer and this fact was admitted into evidence in his county court trial. The defendant appealed to the circuit court which reversed his conviction.
The question of admissibility of such a refusal is unsettled. The interpretation of Florida's implied consent law, Section 322.261(1)(a), must be clarified. The refusal to submit to a scientific test is admissible into evidence against an accused only if such test is both admissible and compulsory. See State v. Esperti, 220 So.2d 416 (Fla.2d DCA 1969). We conclude that Section 322.261(1)(a) provides for such a compulsory test and a refusal to submit is admissible against an offending driver.
At first blush the cases of State v. Riggins, 348 So.2d 1209 (Fla.4th DCA 1977), and McDonald v. State, 364 So.2d 1241 (Fla.2d DCA 1978), seem to dictate a contrary conclusion, but they are distinguishable upon their facts. Both cases dealt with the admissibility of sobriety test results taken over the objections of the defendant. These cases concluded that a driver may not be required to take a sobriety test under Section 322.261(1)(a) over his objection.[1] Neither case involved the later admissibility of evidence concerning the driver's refusal to take the test.
Section 322.261(1)(a) provides that:
Any person who shall except the privilege extended by the laws of this state of operating a motor vehicle within this state shall by so operating such vehicle be deemed to have given his consent to submit to an approved chemical test of his breath for the purpose of determining the alcoholic content of his blood if he is lawfully arrested for any offense allegedly committed while the person was driving *98 a motor vehicle under the influence of alcoholic beverages... . Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 3 months.
The statute should be construed to evidence legislative recognition of consent under the first portion of the statute as being a legal fiction. A driver retains the physical power to refuse a sobriety test but not the legal right to withdraw his implied consent. The physical power/legal right interpretation would not affect the results in either Riggins or McDonald since these cases involved improper police conduct in the taking of the sobriety tests over the objections of the offending drivers.
Public policy considerations favor the physical power/legal right distinction. If Section 322.261(1)(a) is concluded not to be compulsory, the driver who refuses the test is penalized only by the suspension of his license for three months. However, the driver who takes the test faces a greater penalty as the results could be evidence against him at trial. This noncompulsory interpretation would lead to drivers not taking the test.
The physical power/legal right dichotomy was recognized by the Arizona Supreme Court in Campbell v. Superior Court, 196 Ariz. 542, 479 P.2d 685 (1971). The Arizona statute is similar to Florida's statute with two exceptions. First, the Arizona statute expressly provides that if a person under arrest refuses a sobriety test, then "none shall be given." Second, the statute expressly provides that refusal to submit is admissible. The Arizona Supreme Court found this statute did not give the driver a legal right to refuse a sobriety test; it merely evidenced legislative recognition that he had a physical power to refuse to submit. The court found the reason for the provision prohibiting the taking of a sobriety test over the objection of an offending driver was to avoid violence which often attended forcible tests upon "recalcitrant inebriates."
The Fourth District Court in Riggins was apparently concerned by what it viewed as a conflict between the first portion of the Florida statute in which the driver is deemed to have consented to a sobriety test and the second portion in which a penalty is provided for those drivers who refuse to submit to the test. We submit, however, that these two sections are not in conflict, for the second portion merely evidences a recognition that the driver still retains the physical power to refuse to take the test.
Although we agree with the state that Section 322.261(1)(a) provides for a compulsory sobriety test and that refusal to submit to such a test would ordinarily be admissible into evidence, we deny certiorari in this case. The arresting officer testified at trial that after the lawful arrest, he read the following statement to the defendant:
I am now offering to give an approved chemical test of your breath for the purpose of determining the alcoholic content of your blood. If you refuse to take this test, your privilege of operating a motor vehicle will be suspended for a period of three months. Do your understand these? (Emphasis added.)
The officer then stated that he asked the defendant if he would submit to a sobriety test. The defendant refused. Based on the officer's statement, we find that a reasonable person in the defendant's position could believe he had a legal choice as to whether to submit to the test. The defendant should have been told that the officer was prepared to give an approved chemical test; that the driver did not have a right to refuse; but that if he did refuse, that his driver's license would be revoked for a period of three months. Therefore, we find that the circuit court did not depart from the essential requirements of law in reversing the defendant's conviction in the lower court.
Certiorari denied.
GRIMES, C.J., and OTT, J., concur.
NOTES
[1] Both of these cases assumed that Section 322.261 authorized the right to object to the withdrawal of a blood sample even though the only reference in the statute to the taking of blood samples is with respect to incapacitated persons.