483 So.2d 31 (1985)
STATE of Florida, Petitioner,
v.
Andrew Lawrence YOUNG, James Allen Taylor, Willie Ray Burton, Joseph Charles Craft, Michael Franchini and Sandra Shipley Parnell, Respondents.
Nos. 85-1395 to 85-1400.
District Court of Appeal of Florida, Fifth District.
December 26, 1985.
Rehearing Denied January 31, 1986.
Stephen L. Boyles, State Atty. and John V. Doyle, Asst. State Atty., Daytona Beach, for petitioner.
Michael H. Lambert, P.A., Daytona Beach, for respondents, Young, Taylor, Burton and Franchini.
Eric A. Latinsky, Daytona Beach, for respondents, Parnell and Craft.
ORFINGER, Judge.
The State petitions this court for a writ of certiorari to review a circuit court's affirmance of a county court order granting the motions of the various defendants to suppress the results of breath tests for alcohol. We hold that the circuit court departed from the essential requirements of law when it upheld the county court's order, resulting in a miscarriage of justice, Combs v. State, 436 So.2d 93 (Fla. 1983), and we quash the order.
Each of the defendants was charged with driving under the influence of alcoholic beverages. After the defendants were arrested, they all were read the same warning concerning the chemical breath test:
I am prepared to give you an approved chemical test of your breath to determine the alcoholic content of your blood. You do not have a right to refuse to take the test, but if you do refuse, your driver's license will be suspended for a period of six months or one year if you have refused before. Do you understand what I have just read? [The emphasized words create the controversy here].
After having been so advised, each defendant submitted to the chemical breath test.
The defendants filed motions to suppress the results of the chemical breath tests, claiming that the arresting officers gave them an improper warning, by stating that the defendants did not have a right to refuse to take the test. The defendants assert that they did have a right to refuse to take the test under section 316.1932, *32 Florida Statutes (1983), and therefore the breath tests were unlawfully administered. The county court granted the motion to suppress and the State appealed. The circuit court, sitting in its appellate capacity, affirmed the order.
Section 316.1932(1)(a), Florida Statutes (1983) provides in pertinent part:
Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state shall, by so operating such vehicle, be deemed to have given his consent to submit to an approved chemical test of his breath for the purpose of determining the alcoholic content of his blood, ... if he is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages... . The breath test shall be incidental to a lawful arrest and administered at the request of a law enforcement officer who has reasonable cause to believe such person was driving or was in actual physical control of the motor vehicle within this state while under the influence of alcoholic beverages... . Such person shall be told that his failure to submit to such a breath test ... will result in the suspension of his privilege to operate a motor vehicle for a period of 6 months, for a first refusal, or for a period of 1 year if the driving privilege of such person has been previously suspended as a result of a refusal to submit to such a test or tests. The refusal to submit to a chemical breath ... test upon the request of a law enforcement officer as provided in this section shall be admissible into evidence in any criminal proceeding. [Emphasis added].
No evidence was taken in the county court. The court ruled, as a matter of law, that the warning given was "an improper, misleading or a wrong instruction and contrary to statutory provisions." The county court specifically refused to find the warning "coercive," although this finding was urged upon it by the defendants. The court then concluded that although the test results would have been admissible had the police officers not given the defendants the statutory warning at all, citing Sambrine v. State, 386 So.2d 546 (Fla. 1980) and Pardo v. State, 429 So.2d 1313 (Fla. 5th DCA 1983), the results were not admissible and should be suppressed because the defendants were given an incorrect and misleading (although non-coercive) warning.
On appeal, the circuit court thought it "paradoxical ... for the legislature to punish that which a person has a `right' to do", but nevertheless believed itself bound by the opinion in State v. Ducksworth, 408 So.2d 589 (Fla. 2d DCA 1981) holding that the breath test was not compulsory, because there was no controlling precedent in this district. We agree with the circuit court's observations as to the illogic of the result, and hold that Ducksworth does not control the case here.
The parties appear to agree that the warning used by the police officers here was composed in part from the statutory language of section 316.1932 and in part from State v. Duke, 378 So.2d 96 (Fla. 2d DCA 1979). In Duke, unlike here, the issue was whether the refusal of the defendant to submit to a breathalyzer test offered by the arresting officer could be admitted into evidence against him in his trial for D.U.I.[1] The circuit court reversed the defendant's county court conviction because such evidence had been admitted. The district court affirmed, holding that because the police officer had, in effect, offered the defendant a choice of taking the test or refusing it, his refusal to take the test should not be used against him, notwithstanding the fact that the court considered the test compulsory and construed the statute *33 to mean that defendant had no right to refuse.
The county court relied on two cases decided after Duke. The first was Sambrine v. State, 386 So.2d 546 (Fla. 1980), which involved the question of whether the results of a blood test were admissible in evidence against a defendant in his trial for manslaughter by operation of a motor vehicle while intoxicated, when the blood was extracted for testing over defendant's affirmative refusal to submit, and after he had refused to submit to a breath test. The supreme court stated the issue to be "whether or not a chemical test for blood alcohol is admissible evidence when a driver exercises the option given him by the Florida legislature in Section 322.261(1)(a), [now section 316.1932(1)(a)] Florida Statutes (1975), to refuse to consent to a chemical test of his breath." The court concluded that although there was no constitutional impediment to the taking of the blood sample over a defendant's protest, the Florida legislature, by statutory enactment, had granted to its citizens greater protection than was afforded by the federal constitution. Under this statute, stated the court,
[A] conscious person is given the right to refuse to take a chemical test if he is willing to suffer a three-month [now six months] suspension for failure to take a breathalyzer or blood alcohol test.[2]
From this quoted language in Sambrine, and from other expressions in the same opinion discussing the "right to refuse testing," the county court concluded that a driver who was arrested for driving while intoxicated did have a legal right to refuse the breath test, hence the instruction given by the officers in this case was misleading and improper as a matter of law. We believe the county court read Sambrine too literally, and we conclude that the supreme court did not intend the meaning the county court ascribed to it.
The word "right" is a broad term, having a wide scope of meaning in its various legal applications, and it has no satisfactory definition or explanation except in connection with some concrete conception of the thing out of which it grows. See 77 C.J.S. 390 (1952). Since the word "right" may be applied in different contexts, the supreme court's use of that term is subject to interpretation.
When discussing the "right to refuse testing" in Sambrine, the supreme court was not equating that right with legal rights such as the right to vote, or the right to a trial by jury, or the right to be free from unreasonable searches and seizures. These latter rights are true legal rights in that the citizen is not penalized or punished for exercising them. What the supreme court was saying in Sambrine was not that a driver had a legal right to refuse to be tested, (because if he did, he could not be punished for the exercise of such right) but that the statute gave him a legal right to make a choice; or, as stated by the court, the statute gave him the option to refuse to submit to the test. This "option" cannot be equated with a legal right when the exercise of that option involves a penalty and can also be used as inculpatory evidence in the driver's criminal trial.
There is no doubt that the statute attaches a penalty for the exercise of this "right." The Sambrine court recognized the legislature's power to establish this penalty for non-compliance with the implied consent law, when it said:
It is a matter peculiarly within the legislative sphere to establish penalty provisions for noncompliance with substantive law. The legislature may have concluded that it was preferable to enforce the implied consent law through this method *34 than mandate that its law enforcement officials be required to physically restrain every individual who refused to submit to the test.
Sambrine 386 So.2d at 549.
The circuit court recognized the illogic of classifying an act as a "right" where the state exacted a penalty for its exercise, but felt compelled to affirm because the second district had receded from Duke in State v. Ducksworth, supra, interpreting Sambrine to mean that the breath test was not compulsory. Thus, as in Duke, the Ducksworth court concluded that the fact that a defendant refused to submit to testing could not be introduced in evidence at defendant's trial. But that issue is not before us now. Insofar as Duke and Ducksworth hold that evidence of a defendant's refusal is not admissible in evidence, those cases are no longer good law. See South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), State v. Sowers, 442 So.2d 239 (Fla. 5th DCA 1983), and the amendments to section 316.1932 enacted after Ducksworth was decided.
The defendants in the instant case argue that the results of the chemical breath tests were fruits of tests administered unlawfully because the warning incorrectly stated the law. The problem with defendants' argument is that section 316.1932, Florida Statutes, does not require that a person lawfully arrested be warned that he has a right to refuse the chemical breath test; he must only be told that his failure to submit to such a test will result in the suspension of his privilege to operate a motor vehicle. See Sambrine, 386 So.2d at 549 (supreme court noted that there is no provision in statute that a driver be informed of his right to refuse). Even if no warning is given at all, the results of a consensual breath test are admissible in evidence at defendant's trial. Pardo v. State, supra. The warning given here was not so misleading as to render the results of the chemical breath test inadmissible. Although the warning did convey to the defendants that they did not have a right to refuse to take the chemical breath test, the warning also informed the defendants of the consequences if they did refuse to take such test. The defendants were not told the test could be administered over their objection. Thus at worst, the instruction was contradictory, but complied with the statute when it advised the defendants of the consequence of refusal.
Admittedly, the warning used here is awkward because it appears to contradict itself. However, the warning does state, as the statute requires, that a refusal to take the test will result in the suspension of the suspect's driver's license, so that the option to refuse is mentioned. Additionally, the suspect is asked if he understands what he has been told, so the opportunity is given to clear up any confusion that might result from the apparent contradiction.[3]
The circuit court should have reversed the order suppressing the results of the blood tests, and in failing to do so departed from the essential requirements of law. We therefore grant the petition, quash the order of the circuit court, and remand the cause to the circuit court for further proceedings consistent herewith.
PETITION GRANTED; ORDER QUASHED, REMANDED.
COBB, C.J., and COWART, J., concur.
NOTES
[1] Duke was decided prior to the decision of South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), and prior to the insertion by the legislature of Florida into section 316.1932 of language which makes a driver's refusal to take the test admissible into evidence.
[2] Since Sambrine was decided, the legislature has abolished the option to refuse to submit to a blood test for alcoholic content where the officer has probable cause to believe that a motor vehicle driven by or in the physical control of a person under the influence of alcoholic beverages has caused the death or serious bodily injury of a human being, by providing that the law enforcement officer may use reasonable force, if necessary to require such person to submit to the administration of the blood test. See § 316.1933(1), Fla. Stat. (1983).
[3] We do not decide whether the test results would be inadmissible under the statute if, after an evidentiary hearing, a court determines that a defendant was, in fact, misled by the warning and thus improperly coerced into taking a test which he might otherwise have refused, because that issue is not before us. To avoid this result, an amendment to the warning might be deemed advisable, so that it includes only what the statute requires.